UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GREGORY DUNBAR,

        Plaintiff,                                     Hon. Janet T. Neff

v.                                            Case No. 1:18-cv-1355

DAVID HUYGE, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on a Motion for Summary Judgment Based on Failure to Exhaust filed by Defendants Jody LeBarre, Janine Guastella, Dana Butler, Margaret Greiner, and Gordon Lake (MDOC Defendants) (ECF No. 71), and a Motion for Summary Judgment filed by Defendants David Huyge, Hanna Saad, Esmaeil Emam, and Melanie Clark (ECF No. 91) (Corizon Defendants) based on Plaintiff's failure to exhaust and as to the merits of Plaintiff's claim against Defendant Clark.   Plaintiff has responded to both motions (ECF Nos. 75 and 99) and Defendants have replied (ECF Nos. 83 and 101).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions be **GRANTED IN PART AND DENIED IN PART**.   The undersigned further recommends that, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court dismiss Plaintiff's claims: (1) pursuant to 42 U.S.C. sections 1981, 1985(3) and 1986; and (2) against Defendants LeBarre, Lake, and Saad for failure to state a claim upon which relief may be granted.

# I.  BACKGROUND

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed his complaint in this case on December 6, 2018, against David Huyge, P.A., Health Unit Manager (HUM) Jody LeBarre, Psychiatrist Hanna Saad, M.D., Psychologist Janine Guastella, Psychiatrist Esmaeil Emam, M.D., Psychologist Dana Butler, Psychologist Margaret Greiner, and Nurse Gordon Lake alleging claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986 arising out of events that occurred while Plaintiff was incarcerated at Ionia Correctional Facility (ICF) in Ionia, Michigan.   Subsequently, Plaintiff supplemented his complaint to add claims against Psychiatrist Melanie Clark, M.D., based on events that occurred at Lakeland Correctional Facility (LCF) after Plaintiff transferred there in December 2018.[1]

Plaintiff alleges the following facts in his complaint.  For eight months, Plaintiff had a burning pain in his abdomen, which Defendant Huyge told Plaintiff was an abdominal strain that they (the medical staff) did not treat.  Although Plaintiff wrote grievances during that time, no tests, X-rays, or MRIs were performed.   On April 18, 2018, Plaintiff was sent to McLaren Hospital in Lansing from Sparrow Hospital in Ionia with "three pints of blood missing." (PageID.3.)  Plaintiff was diagnosed with colon cancer and told that he had a large cancerous tumor in his lower abdomen.   The tumor was removed that day.

Plaintiff was eventually returned to ICF, where he was placed in the same cube with loud inmates who banged on his bed, sang, rapped, and yelled to ensure that Plaintiff could not sleep. During this time Plaintiff was not on pain medication.

Plaintiff alleges that in 2006 MDOC employees injected him with Hepatitis C and that he has not received any treatment for this condition.   Plaintiff appears to allege that Defendant Huyge

---

[1]  Plaintiff also sued Michael Barrett, M.A., in his supplement.   Defendant Barrett has not been served or appeared in the case as of this date.

failed to treat his Hepatitis C.   During a chronic care medical check-up of unspecified date, Defendant Huyge asked Plaintiff how much money he had won in a lawsuit Plaintiff had filed. Plaintiff told Defendant Huyge that he had no business asking about the lawsuit and that the inquiry violated Plaintiff's right to confidentiality to the courts.   In another chronic care check-up of unspecified date, Defendant Huyge told Plaintiff that they were going to operate on his brain, and Plaintiff asked Defendant Huyge when he was going to do something about the burning pain in Plaintiff's stomach that was preventing him from working out.

During an interview with Plaintiff in October 2018, Defendant LeBarre told Plaintiff that because of Plaintiff's refusal to undergo chemotherapy for his cancer, prison health staff were concerned that Plaintiff's "sue happy relatives" would sue them if something happened to Plaintiff. Shortly thereafter, Defendant Saad told Plaintiff that Defendant LeBarre said that Plaintiff was going around working out and doing pushups and other things and telling people that he did not have cancer.   Defendant LeBarre also told Defendant Saad that Plaintiff had detached himself from reality.   Defendant Saad then arranged a hearing before a panel of mental health care providers to determine whether an involuntary mental health treatment order for Plaintiff was warranted.

On October 23, 2018, a mental health panel comprised of Defendants Emam, Butler, and Greiner found Plaintiff mentally ill and in need of mental health treatment.   Plaintiff claims that, during the panel hearing, he was denied his rights to present evidence, cross-examine witnesses, and present his own witnesses.   Plaintiff alleges that Defendant Guastella wrote a report indicating that she interviewed Plaintiff on October 15, 2018, which is the same day that Defendant Saad interviewed Plaintiff.   Plaintiff states that Defendant Guastella's assertion that she interviewed Plaintiff on October 15, 2018, is false because she did not interview Plaintiff.

Plaintiff appealed, and the panel's determination was upheld.   After the panel order was issued, Defendant Lake told Plaintiff that, if he did not appear at the medication window for voluntary medication, officers would escort him to health care and he would be injected with medication, pursuant to the order.

On January 17, 2019, after Plaintiff was transferred to LCF, a mental health panel hearing was held to determine whether the prior involuntary mental health order should be extended. During the hearing, Defendant Clark falsely told the hearing panel that Plaintiff had a long history of being referred to mental health.   When Plaintiff cross-examined Defendant Clark about this statement and asked about documents supporting this assertion, Defendant Clark could not produce or cite any documents.   Plaintiff alleges that, during the hearing, Clark mentioned that Plaintiff had filed lawsuits.   Plaintiff further alleges that Defendant Clark violated his right to file a grievance by upping his dosage of Risperdal from 1 mg to 7 mg, and then back down to 4 mg, and subsequently to 3 mg.   Plaintiff alleges that, if he refuses to take the Risperdal, corrections officers will hold him and a nurse will inject him with 5 mg of Haloperidol.

## II.  DISCUSSION

### A.    Claims at Issue

Pursuant to the Prisoner Litigation Reform Act, a court shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or seek monetary relief against a defendant who is immune.   28 U.S.C. §§ 1915(e)(2)(B), 1915A.   Applying these provisions, the undersigned recommends that several of Plaintiff's claims be dismissed for failure to state a claim.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the

assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

Although a court must liberally construe pro se pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), pro se plaintiffs must still meet basic pleading requirements, and a court is not required to conjure allegations on their behalf. *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001); *see also Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("The trial and appellate courts should not have to guess at the nature of the claim asserted.").

1.      **Claims Under §§ 1981, 1985(3), and 1986**

At the beginning of his complaint, Plaintiff alleges that he brings his action pursuant to 42 U.S.C. § 1981, 1983, 1985(3) and 1986.   Plaintiff fails to state a claim pursuant to 42 U.S.C. § 1981.   Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts."   *Runyon v. McCrary*, 427 U.S. 160, 168 (1976); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) (holding that "as required by the plain text of the statute, . . . a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce'") (quoting 42 U.S.C. § 1981).   Plaintiff fails to allege any fact pertaining to a contract or indicating that Defendants' acts were based on racial discrimination.

Plaintiff also fails to state a claim based under Section 1985(3).   To maintain a cause of action for conspiracy under Section 1985(3), a plaintiff must establish the following elements:   (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.   *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)).   In addition, the plaintiff must demonstrate that the conspiracy was motivated by a class-based animus, such as race.   *Johnson*, 40 F.3d at 839.   Here, other than making a few conclusory statements about a conspiracy and alleging a series of events, Plaintiff provides no factual basis that plausibly suggests that Defendants acted pursuant a conspiracy, let alone a conspiracy motivated by class-based animus.   In addition, "because § 1986 is derivative of § 1985, [Plaintiff] also fails to state a claim

under § 1986." *Ruiz v. Hofbauer*, 325 F. App'x 427 (6th Cir. 2009) (citing *Browder v. Tipton*, 630 F.2d 1149, 1155 (6th Cir. 1980)).

Finally, to the extent Plaintiff purports to allege a conspiracy claim under 42 U.S.C. § 1983, he also fails to state a claim.   The Sixth Circuit has held that "vague and conclusory allegations, unsupported by material facts, are not sufficient to state a conspiracy claim under § 1983." *Becker v. Clinton*, No. 99-3811, 2000 WL 553911, at *1 (6th Cir. Apr. 28, 2000) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).   As noted, Plaintiff recites legal conclusions regarding conspiracies and alleges that each Defendant engaged in separate, unrelated acts. Plaintiff's conclusory allegations, without any factual support, do not suffice to support a conspiracy claim.  *See Annabel v. Heyns*, No. 16-2398, 2018 WL 4870866, at *4 (6th Cir. Apr. 10, 2018) (concluding that the plaintiff's allegation that two defendants conspired to retaliate against him because the plaintiff had filed a lawsuit against one of the defendants and other MDOC employees was "too vague and conclusory to support a § 1983 conspiracy claim").

## 2.    Individual Defendants

Plaintiff also fails to state claims against Defendants LeBarre, Saad, and Lake.   First, as to Defendant LeBarre, Plaintiff alleges that she told him that health care staff were worried about being sued by Plaintiff's "sue happy relatives" if something happened to Plaintiff because he refused chemotherapy and that she told Defendant Saad that Plaintiff was going around working out and doing push-ups and other things and telling people that he did not have cancer.   She further told Defendant Saad that Plaintiff had detached himself from reality.   (ECF No. 1 at PageID.5.) Although Plaintiff's allegation can be construed that Defendant LeBarre made a false statement to Defendant Saad that resulted in Plaintiff being subjected to a mental health panel hearing, Plaintiff does not allege—and nothing in his complaint indicates—that LeBarre's statement to Defendant

Saad was mentioned at the hearing or formed any basis for the mental health panel's October 23, 2018 finding that Plaintiff was mentally ill.   *See Annabel v. Heyns*, No. 2:12-cv-13590, at *8 (E.D. Mich. July 26, 2106) (rejecting the plaintiff's Fourteenth Amendment due process claim alleging that the defendant gave false testimony at the plaintiff's mental health panel hearing because the plaintiff failed to present evidence that the defendant's statements influenced the panel's ultimate decision).

As for Defendant Saad, Plaintiff's only allegation is that he arranged a mental health panel hearing for Plaintiff.   Absent additional conduct, Plaintiff fails to state a cognizable claim against Defendant Saad.   The same is true with regard to Defendant Lake.   Plaintiff merely alleges that Defendant Lake threatened to enforce a facially-valid involuntary mental health treatment order against Plaintiff if Plaintiff did not voluntarily appear at the medication window.

Plaintiff's supplemental claim against Defendant Clark for violating his right to file a grievance by upping the dosage of his psychotropic medication is also subject to dismissal.   The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.   *Walker v. Mich. Dep't of Corr.*, 148 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 8 F.3d 1422, 1430 (7th Cir. 1996).   Michigan law does not create a liberty interest in the grievance procedure.   *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).   Because Plaintiff has no liberty interest in the grievance process, Defendant Clark's alleged interference with the grievance did not deprive him of due process.   In addition, even if Plaintiff had been improperly prevented from filing a grievance, it would not have interfered with any constitutional right. Plaintiff's right of access to the courts to petition for redress of his grievances (i.e., by filing a

lawsuit) cannot be compromised by his inability to file an institutional grievance.   *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977).   The exhaustion requirement only mandates exhaustion of available administrative remedies.   *See* 42 U.S.C. § 1997e(a).   If Plaintiff was in fact medicated to the point that he could not sufficiently function to file a grievance, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.   Moreover, Plaintiff's reference to Grievance No. LCF 2019-03-0249-28B in his supplemental complaint, in which he complained about Defendant Clark increasing his medication dosage, shows that Plaintiff still retained the ability to file grievances.   (ECF No. 26 at PageID.169.)   Finally, Plaintiff's statement that Clark's mention of Plaintiff filing lawsuits during the January 17, 2019 mental health hearing constituted retaliation is a legal conclusion without any supporting factual allegations.   Thus, Plaintiff fails to state a retaliation claim against Defendant Clark based on her comments at the mental health hearing.

In sum, the undersigned concludes that Plaintiff has plausibly alleged the following claims: (1) Defendant Huyge violated Plaintiff's Eighth Amendment right to treatment of his serious medical condition by failing to treat an abdominal strain later diagnosed as colon cancer and failing to treat his Hepatis C; (2) Defendants Emam, Butler, and Greiner violated Plaintiff's Fourteenth Amendment due process rights by precluding him from presenting evidence, cross-examining witnesses and presenting his own witnesses at the October 23, 2018 panel hearing; (3) Defendant Guastella violated Plaintiff's due process rights by falsely claiming in her report that she interviewed Plaintiff; and (4) Defendant Clark violated Plaintiff's due process rights by lying at

the January 17, 2019 involuntary mental health hearing by telling the panel that Plaintiff had a long history of being referred to mental health.[2]

## B.   Motions for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Material facts are facts that are defined by substantive law and are necessary to apply the law.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A dispute is genuine if a reasonable jury could return judgment for the non-moving party.   *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."   *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."   *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).   Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."   *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   The Sixth Circuit has emphasized that the party with the burden of proof "must show the

---

[2] To the extent Plaintiff asserts a claim that mental health employees took his court documents that he wished to read into the record at the October 23, 2018 hearing to make copies, instead of allowing him to read them into the record, that claim is properly dismissed for failure to state a claim.   Plaintiff identifies only non-Defendant Brian Van't Hof as the person who took the documents to make copies.   Moreover, if Plaintiff is claiming taking and copying the documents violated some undefined right he had to confidentiality in the documents, the claim is undermined by his own admission that he intended to read the content of the documents into the record at the hearing.   (ECF No. 1 at PageID.7.)

record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### 1. Failure to Exhaust

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" that the defendant bears the burden of establishing. *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody.  Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration."

Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P.  If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance.  *Id.*  The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff.  *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.  *Id.* at ¶ BB.  If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.  *Id.* at ¶ FF.  The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*

In support of their motions, Defendants attach Step III Grievance Reports showing grievances that Plaintiff exhausted through Step III during the relevant time period.  (ECF Nos. 72-3 and 91-4.)  Defendants argue that, with the exception of Plaintiff's claim that Defendant Clark lied at the January 17, 2019 involuntary mental health hearing, Plaintiff has failed to properly exhaust his claims.

### a.    Defendant Huyge

Plaintiff filed one grievance concerning Defendant Huyge's failure to provide medical care for Plaintiff's abdominal strain/colon cancer and Hepatitis C, Grievance No. ICF 2018-09-1543-28E (1543 Grievance).  In the 1543 Grievance, Plaintiff identified the date of the incident as "ongoing" and stated that since "3-21-18 and before and after that" he had tried to get transferred to another facility because he was not receiving treatment at ICF for his cancer or his Hepatitis C.

Plaintiff complained that he was suffering constantly from burning pain and had not been given pain medication.   He further stated that Defendant Huyge and non-Defendant R.N. Fletcher had told him over an eight-month period that he had an abdominal strain (later determined to be colon cancer), without ordering an X-ray, an MRI, or pain medication.   The 1543 Grievance was rejected at Step I pursuant to MDOC Policy Directive 03.02.130 ¶ G as untimely.   The rejection was upheld at Steps II and III.   (ECF No. 72-3 at PageID.414–18.)

When a prisoner files a grievance that prison officials have rejected as untimely, his claim is not "properly exhausted." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006).   Defendants argue that Plaintiff failed to properly exhaust the 1543 Grievance.   However, courts have held that when a prisoner's grievance concerns lack of medical care for a chronic medical condition that the prisoner identifies as "ongoing," the purposes of exhaustion will have been satisfied so long as the prisoner has provided prison officials sufficient information to address the issue.   In *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), the court observed that while the time for filing a grievance for an acute medical condition, such as a heart attack, can be readily ascertained, "[t]he seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition—and the resulting pain suffered by the prisoner that equates to the infliction of punishment—may not become manifest until then as well." *Id.* at 783.   The court said that such a condition is "properly identified as 'ongoing' and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." *Id.* at 783–84.   Similarly, in *Hoye v. Nelson*, No. 1:07-cv-110, 20007 WL 5062014 (W.D. Mich. October 18, 2007), *report and recommendation adopted in part and rejected in part*, 2008 WL 907453 (W.D. Mich. Mar. 28, 2008), the court concluded that the plaintiff properly exhausted his grievance for "ongoing" lack of treatment for

his back injury, even though the grievance coordinator substituted the date of the plaintiff's back injury for the plaintiff's description an "ongoing" issue.   The court noted that "[i]f medical claims are to be grieved within five business days of a plaintiff's injury rather than when a plaintiff is actually denied medical treatment, then most medical claims would fail under the MDOC's timeliness requirement."   *Id.* at *7.   Here, although Plaintiff indicated that he had been seeking treatment since at least March 21, 2018 for chronic conditions that Plaintiff identified as "ongoing," the 1543 Grievance should have been deemed timely.[3]

### b.    Defendants Emam, Butler and Greiner

Plaintiff filed several grievances relating to the October 23, 2018 panel hearing:   ICF 2018-1771-28B (1771 Grievance) (ECF No. 72-3 at PageID.404–08); ICF 2018-10-1772-28B (1772 Grievance) (ECF No. 72-3 at PageID.419–22); ICF 2018-10-1773-28B (1773 Grievance) (ECF No. 72-3 at PageID.409–13); and ICF 2018-10-1776-28B (1776 Grievance) (ECF No. 72-3 at PageID.394–98).   The 1771 Grievance named the mental health panel members—Defendants Emam, Butler, and Greiner—and complained that they violated Plaintiff's right to due process by denying him the opportunity to present witnesses and by rushing the hearing.   The 1772 Grievance did not identify any particular individual but complained that mental health employees violated Plaintiff's right to "confidentiality to the courts" when they forced Plaintiff to give them court documents that he wished to read into the record at the hearing and made copies of those documents instead of allowing him to read them into the record.   The 1773 Grievance named Defendants Emam, Butler, and Greiner and alleged that they denied Plaintiff an opportunity to present evidence that Plaintiff identified in his grievance.   Plaintiff requested a new hearing to

---

[3] Defendants do not argue that the 1543 Grievance was properly rejected on any ground other than timeliness.   (ECF No. 91 at PageID.545.)

allow him to read his evidence into the record.  Finally, the 1776 Grievance complained that Defendants Emam, Butler, and Greiner refused to allow Plaintiff to question Defendant Guastella about her report in which, Plaintiff asserted, Defendant Guastella falsely stated that she interviewed Plaintiff and which was much different than Defendant Saad's report.  All of these grievances were rejected as vague at Step I, and the rejections were upheld at Steps II and III.

The MDOC Grievance Procedure provides that a grievance may be rejected if, among other things, "[i]t is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative of those raised in another grievance filed by the grievant."   Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ G.1.   The Grievance Procedure does not define "vague."   The MDOC Defendants argue that the grievance coordinator properly rejected the grievances as vague for various reasons   For example, they argue that the 1771 Grievance was properly rejected as vague and unclear because Plaintiff stated that he told the panel that he "had witnesses to testify about [him] having talked with P.A. Huyge" and also wrote that "before [he] could speak to tell them [his] work supervisor T. Moore was in unit one and [he] wanted him to testify about [his] work report being excellent."   (ECF No. 83 at PageID.489.)   But the grievance coordinator did not say any of this; he gave no explanation for why he found the 1771 Grievance vague.   The same is true of the 1772, 1773, and 1776 Grievances.   The Grievance Procedure states what should be included in a grievance:   "The issues should be stated briefly but concisely.   Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ R.   With the exception of the 1772 Grievance (which only referred to "mental health employees"), all of the grievances included the necessary information and were not vague.  *See Maxwell v. Corr. Med. Servs.*, 538 F. App'x 682, 688 (6th

Cir. 2013) (holding that the plaintiff's grievance was not "vague" where the subject of the grievance was clear and it provided prison officials all the information they needed to address and resolve the issue).   A fair reading of the 1771 Grievance shows that Plaintiff was complaining that Defendants Emam, Butler, and Greiner refused to allow him to present witnesses at the panel hearing, in violation of Policy Directive 04.06.183 ¶ X.2 and his right to due process.   A fair reading of the 1773 Grievance shows that Plaintiff was complaining that Defendants Emam, Butler, and Greiner refused to allow him to present evidence that he brought to the hearing. Plaintiff requested another hearing so that he could present his evidence.   Finally, a fair reading of the 1776 Grievance shows that Plaintiff was complaining that Defendants Emam, Butler, and Greiner precluded Plaintiff from questioning Defendant Guastella about her report.

Accordingly, the 1771, 1773 and 1776 Grievances were improperly rejected as vague and properly exhausted Plaintiff's claims against Defendants Emam, Butler, and Greiner.

### c.    Defendant Guastella

Although Plaintiff mentioned Defendant Guastella in the 1776 Grievance, he did so only in the context of complaining that Defendants Emam, Butler, and Greiner violated policy and his rights by not allowing him to question Defendant Guastella about her report.   Plaintiff has not cited a grievance exhausting a claim against Defendant Guastella for submitting a false report at the October 23, 2018 panel hearing.   Accordingly, Plaintiff's claim against Defendant Guastella is properly dismissed for lack of exhaustion.

### d.    Defendant Clark

The Corizon Defendants concede that Plaintiff properly exhausted his claim that Defendant Clark lied at the January 17, 2019 panel hearing.   (ECF No. 91 at PageID.537.)

### 2.    Defendant Clark's Merits Motion

Defendant Clark moves for summary judgment on Plaintiff's claim that she lied at the January 17, 2019 hearing when she told the panel that he had a long history of being referred to mental health.   Clark supports her motion with an affidavit and Plaintiff's medical records regarding his mental health treatment at LCF.

Plaintiff was transferred from ICF to LCF on December 20, 2018.   (ECF No. 92 at PageID.701.)   On December 26, 2018, Sandra Powell, M.A., performed an Intake/Admission screening of Plaintiff.   Plaintiff stated that he was on an involuntary treatment order and reported that he had had no prior mental health treatment while in the community or while incarcerated with the MDOC until 2018.   Plaintiff stated that he believed that he began receiving mental health treatment as retaliation for refusing chemotherapy after a cancerous tumor was removed.   (*Id.* at PageID.702.)   Plaintiff reported that he was compliant with his prescribed medication (Risperdal) because did not want injections.   (*Id.*)

On December 28, 2018, Ms. Powell saw Plaintiff for a review of his treatment plan.   She noted that Plaintiff's current medications included Risperdal, to be crushed and dissolved, with an order of 5 mg of intramuscular Haloperidol to be given the next morning after each refusal of Risperdal, which had not yet been needed.   Ms. Powell noted that Plaintiff's treatment would continue to focus on his psychotic symptoms and that he could be discharged from mental health services if:   (1) he did not have a major mental disorder diagnosis; (2) was no longer in need of psychotropic medications; and (3) had a global assessment functioning (GAF) score greater than 60.   (*Id.* at PageID.704–05.)

Later that day, Ms. Powell completed a Qualified Mental Health Professional Evaluation, in which she documented that Plaintiff was placed on an involuntary treatment order in October

2018, after it was reported that Plaintiff presented with delusions, ideas of persecution, and paranoia.  Ms. Powell also noted that at that time it was indicated that any psychosis may be due to primary thought disorder or medically induced.  She further noted that it was reported that Plaintiff was inconsistent in his understanding of the consequences of his medical condition and refusing medical treatment, specifically chemotherapy.  (*Id.* at PageID.706.)

Defendant Clark first assessed Plaintiff's continued need for a panel order on January 3, 2019.  At that time, she documented that Plaintiff had sporadic older contacts with mental health services over the years repeatedly showing observed paranoid thinking but no frank psychosis.  (ECF No. 102 at PageID.788.)  She noted that Plaintiff was initially prescribed Risperdal to treat psychotic symptoms after an initial panel order was issued in October 2018.  She noted that Plaintiff showed paranoid beliefs and inaccurate impressions but no tangentiality and no signs or reaction to internal stimuli.  Defendant Clark noted that Plaintiff's speech was rapid and became faster and more animated as he described his perceived medical condition and its risks.  Defendant Clark did not change Plaintiff's medication during the visit.  (*Id.*)  Defendant Clark prepared the panel paperwork for an extension of the order for involuntary medication.  (*Id.*)

On January 9, 2019, Michael Barrett, M.A., served the paperwork for an involuntary medication hearing on Plaintiff.  Plaintiff objected to the need for treatment and said that he wanted to attend the hearing.  (ECF No. 92 at PageID.710.)  On January 16, 2019, Defendant Clark reviewed Plaintiff's chart and noted that, pursuant to MDOC policy, Plaintiff's medications were being held for a panel hearing the following day.  (ECF No. 102 at PageID.788.)  On January 17, 2019, Plaintiff was seen at a mental health panel hearing and his order for involuntary medication was continued.  (ECF No. 92 at PageID.717.)  The panel, which consists of a psychiatrist, a fully-licensed psychologist, and another qualified mental professional, is not

involved in the prisoner's treatment.   Defendant Clark appeared at the hearing and addressed the panel.   In her professional medical opinion, Defendant Clark believed it was important for the panel to be aware of Plaintiff's sporadic history of seeing mental health professionals and his previously-undiagnosed history of paranoid thinking, and she so informed the panel.   (ECF No. 102 at PageID.789.)

The MDOC's procedure for the involuntary treatment of a prisoner with psychotropic medication is set forth in MDOC Policy Directive 04.06.183.   This policy directive provides that a prisoner may be temporarily subjected to involuntary treatment with psychotropic medication where the following conditions are met: "a psychiatrist's certificate [is] executed which states [that] the prisoner is mentally ill," and the psychiatrist concludes that the prisoner "is a present danger to himself or herself or to others;" "the prisoner refuses treatment;" and the psychiatrist orders "involuntary administration of psychotropic medication pending the convening of a Hearing Committee."   *See* Mich. Dep't of Corr. Policy Directive 04.06.183 ¶¶ Q-R.

Copies of the "Psychiatric Certificate, Psychiatric Report, QMHP [qualified mental health professional] Report, and a notice of hearing and rights [must be provided] to the prisoner and, if one has been appointed, to the guardian of the person" prior to the hearing committee being convened.   *Id.* at ¶ S.   The prisoner must be assigned a Mental Health Advisor and must not be medicated for twenty-four hours prior to the hearing.   *Id.* at ¶ T.   The hearing committee must consist of "a psychiatrist, a fully licensed psychologist, and another mental health professional whose licensure or registration requirements include a minimum of a baccalaureate degree from an accredited college or university, none of whom is, at the time of the hearing, involved in the prisoner's treatment or diagnosis."   *Id.* at ¶ C.   The hearing committee must consider "the QMHP Report alleging that the prisoner is mentally ill, the Psychiatric Report, the Psychiatrist's

Certificate, proof that a notice of hearing has been served, proof that the prisoner has not been medicated within 24 hours and any other admissible evidence presented at the hearing." *Id.* at ¶ W.  The prisoner has the right to attend the hearing, may bring along his or her guardian, and is entitled to the assistance of his or her mental health advisor. *Id.* at ¶ X.  The prisoner may present evidence, including witnesses, and may cross-examine witnesses. *Id.*  The hearing committee must then "determine whether the prisoner is mentally ill and, if so, whether the proposed mental health services are suitable to the prisoner's condition.  A finding of mental illness must be confirmed by the psychiatrist on the Hearing Committee to be valid." *Id.* at ¶ Y.  The committee must prepare an official record of the hearing, and must present to the prisoner a report of its findings and orders, along with an appeal form. *Id.* at ¶¶ Z-AA.  The initial period of treatment may not exceed ninety days. *Id.* at ¶ AA.  The prisoner may then appeal the hearing committee's decision to the Director of the Corrections Mental Health Program with the assistance of their mental health advisor; prisoner may then appeal that decision to the state circuit court. *Id.* at ¶ DD.  The policy also provides for renewal of the medication order. *Id.* at ¶¶ EE-FF.  The prisoner is also entitled to a copy of the corrections mental health program ("CMHP") guidebook, which contains "rights information," and is to be offered an "opportunity to consult with staff from the Office of the Legislative Corrections Ombudsman." *Id.* at ¶ GG.

Because none of the members of the hearing committee may be involved in the inmate's current treatment or diagnosis, the MDOC policy provides for an independent decisionmaker. The policy also provides that the inmate has a right to be present at the hearing and present evidence, and can appeal the decision to the Director of the CMHP and the circuit court. Therefore, it is clear that the MDOC policy passes rational basis scrutiny and satisfies procedural due process. *See Washington v. Harper*, 494 U.S. 210, 233-35 (1990).

Here, Plaintiff does not argue that the hearing was not conducted in accordance with the procedural safeguards set forth Policy Directive 04.06.183.  To the contrary, the evidence indicates that the policy was followed.  Plaintiff's sole claim is that Defendant Clark lied at the hearing regarding Plaintiff's long history of mental health treatment.  However, Defendant Clark has established through her affidavit that she informed the hearing panel about Plaintiff's sporadic history of referrals to mental health and his previously-undiagnosed history of paranoid thinking. (ECF No. 102 at PageID.789.)   Plaintiff offers no admissible evidence to rebut Defendant Clark's affidavit.  Moreover, he fails to show or argue that Defendant Clark's statement somehow misled the panel or caused it to reach a decision that it otherwise would not have made.  Plaintiff's statement in his response that "defendant Clark M.D. lied at the hearing stating I had a long history of being referred to mental health to continue the fraud" (ECF No. 99 at PageID.775) is not evidence, and therefore cannot defeat Defendant Clark's motion.  *See Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("It is well established that statements appearing in a party's brief are not evidence.").

## III.  CONCLUSION

For the foregoing reasons, the undersigned recommends that: (1) pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), Plaintiff's claims under 42 U.S.C. §§ 1981, 1985(3), 1986, and his conspiracy claim under § 1983 be dismissed for failure to state a claim and that Plaintiff's claims against Defendants LeBarre, Saad, Lake and his interference-with-right-to-file-grievances and retaliation claims against Defendant Clark be dismissed for failure to state a claim; (2) the MDOC Defendants' Motion for Summary Judgment Based on Failure to Exhaust (ECF No. 71) be **granted in part and denied in part**, dismissing Plaintiff's claim against Defendant Guastella without prejudice and concluding that Plaintiff properly exhausted his claims against Defendants Butler

and Greiner; and (3) the Corizon Defendants' Motion for Summary Judgment (ECF No. 91) be **granted in part and denied in part**, granting summary judgment on Plaintiff's claim against Defendant Clark that she lied at the January 17, 2019 panel hearing and concluding that Plaintiff properly exhausted his claims against Defendants Huyge and Emam.  If the Court adopts this Report and Recommendation, only Plaintiff's Eighth Amendment claim against Defendant Huyge for failure to treat his Hepatitis C and colon cancer and his Fourteenth Amendment due process claims against Defendants Emam, Butler, and Greiner regarding the October 23, 2018 panel hearing will remain.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court 14 days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: June 3, 2020                               /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge