UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH GREGORY DUNBAR,

    Plaintiff,

v.

DAVID HUYGE, et al.,

    Defendants.

_____/

Case No. 1:18-cv-1355

Hon. Hala Y. Jarbou

## ORDER

This is a civil rights action under 28 U.S.C. § 1983 brought by a prisoner proceeding *in forma pauperis*. Plaintiff Joseph Gregory Dunbar originally filed a complaint in this Court in December 2018 (ECF No. 1) and later sought leave to file an amended complaint (ECF No. 26), which was granted (ECF No. 111). Two claims remain in this case. First, Dunbar asserts a Fourteenth Amendment due process violation stemming from an October 2018 involuntary mental health panel hearing conducted by Defendants Mental Health Professional Margaret Greiner, Psychiatrist Esmaeil Emami, M.D., and Psychologist Dana Butler. Second, Dunbar claims that Defendant David Huyge, P.A., violated the Eighth Amendment by failing to treat his hepatitis C and colon cancer.

Defendants moved for summary judgment (ECF Nos. 155, 159), and the motions were referred to Magistrate Judge Sally J. Berens. Judge Berens produced a Report and Recommendation (R&R) recommending that the Court grant Defendants' motions and dismiss the case. (ECF No. 174.) Before the Court are Dunbar's timely objections to the R&R. (ECF No. 176.) Dunbar's objections will be denied, and the Court will adopt the R&R.

## I. Background

The R&R extensively details the factual background in this case. The Court will restate the relevant matters here.

### A. Facts Relating to Hepatitis C

Dunbar has hepatitis C. (R&R, PageID.1460.) Huyge met with Dunbar to examine his hepatitis C on April 11, 2017. (*Id.*, PageID.1461.) Huyge determined that Dunbar's condition was stable and of mild severity. (*Id.*) Nevertheless, Huyge recommended "lab work," but Dunbar refused. (*Id.*) No lab work had been performed since 2012. (*Id.*) Dunbar denied any medical complaints when he met with Huyge. (*Id.*) Another checkup was performed on August 8, 2017. Same as the April examination: Dunbar's condition seemed mild, and he refused lab tests. (*Id.*) At another checkup on February 1, 2018, Huyge determined that Dunbar's hepatitis C was stable, and Dunbar refused lab tests despite Huyge's advice regarding the risks associated with refusing such tests, "including death and disability." (*Id.*) Dunbar had his annual nurse visit with R.N. Fletcher the following day. Fletcher noted that Dunbar was noncompliant with his hepatitis C treatment. (*Id.*)

### B. Facts Relating to Colon Cancer

On April 18, 2018, Dunbar was taken to Sparrow Hospital for abdominal pain. (*Id.*) Doctors discovered a tumor and opined that Dunbar had colon cancer. (*Id.*, PageID.1462.) That same day, Dunbar was transferred to another hospital, where he received a blood transfusion and underwent an operation to remove the tumor. (*Id.*) Dunbar had been complaining of abdominal pain for about a year prior to his hospitalization, beginning in April 2017. On April 4, 2017, he told Fletcher that he had been experiencing intermittent abdominal pain for several months. (*Id.*) Dunbar had a history of polyuria, so Fletcher ordered a urine test. The test indicated the presence of white blood cells, but not blood, in Dunbar's urine. Dunbar was prescribed medication, told to

drink more fluid, and his urine was sent to a lab for testing. (*Id.*) Dunbar and Fletcher met again on April 14, 2017, where Dunbar indicated he had finished the medical regimen and was feeling better but still experiencing pain in his abdomen. (*Id.*) He said he had mentioned the abdominal pain to Huyge in a recent hepatitis C appointment. (*Id.*)

R.N. Treynor examined Dunbar on August 15, 2017, following more complaints of difficulty urinating and tenderness in his lower abdomen. (*Id.*, PageID.1462-63.) R.N. Edwards examined Dunbar the next day. (*Id.*, PageID.1463.) Dunbar was placed on a second round of medication, and a physician ordered a urine culture and urinalysis. During the annual checkup with Fletcher in February 2018, Dunbar complained of having abdominal pain since 2006 and said that he had a hernia. Fletcher checked Dunbar's records, which did not mention hernia, and found no evidence of hernia after examining him. (*Id.*)

On April 4, 2018, Dunbar submitted a healthcare kite complaining of a urinary tract infection and stomach muscle pain. (*Id.*) Fletcher saw Dunbar the same day, where he said his polyuria was worsening and reiterated his complaint about abdominal pain. (*Id.*) Dunbar said he had experienced abdominal pain since 2007 and that it was exacerbated by exercise. (*Id.*) He relayed Huyge's diagnosis that he had simply strained his muscles. Dunbar had recently begun exercising on stairs and had not been taking any over-the-counter medication to treat resulting discomfort. (*Id.*) Fletcher noticed "diffuse tenderness over the entire abdomen" and discussed her observations with Huyge. Huyge restarted Dunbar's polyuria medication, while Fletcher gave Dunbar Motrin and told him to increase his fluid intake. (*Id.*)

On April 10, 2018, Dunbar spoke to R.N. Edwards and reported worsening abdominal pain. (*Id.*) Edwards "noted a nickel-size bulge in the lower right quadrant of [Dunbar's] abdomen" and "ordered a chart review." (*Id.*) Three days later, Dunbar told R.N. Beechler he had been up all

night with urinary frequency.  A urine test came back negative, with no white blood cells or blood present.  (*Id.*)  Beechler advised Dunbar to drink more fluids, urinate on a regular basis and to try to empty his bladder every time, and take over-the-counter pain medication as needed.  (*Id.*, PageID.1464.)

Huyge met with Dunbar on April 17, 2018, to discuss the urinary issues.  Fletcher also met with Dunbar to perform another urine test, which produced normal results.  (*Id.*)  Fletcher convinced Dunbar of the need for lab tests, and Huyge ordered "a comprehensive metabolic panel with complete blood count, platelet and thyroid lab draw."  (*Id.*)  Test results indicated "a critical hemoglobin level of 5.6."  (*Id.*)  Dunbar then met with R.N. Doolittle and reported feeling cold, discoloration in his hands, urinary pain, and severe abdominal pain.  Dunbar was sent to Sparrow Hospital on April 18, where doctors discovered the tumor and colon cancer.

### C. Subsequent Treatment and Involuntary Mental Health Panel

Huyge met Dunbar on April 26, 2018, for a follow-up after surgery.  (*Id.*)  Dunbar reported feeling okay with some weakness and abdominal pain.  Huyge ordered a series of medications and a blood test.  A few days later, Huyge submitted requests for a PET scan, oncology consultation and various tests.  (*Id.*)

A PET scan, conducted on May 17, 2018, "showed no evidence of metastatic disease." (*Id.*, PageID.1465.)  At a May 23 meeting, an oncologist told Dunbar "he would need chemotherapy" but that he "needed to get his other issues under control before starting the treatment."  (*Id.*)  The oncologist also warned Dunbar of the potential consequences of his continued refusal to take several medications ordered by Huyge.

The next several months featured much back-and-forth: Dunbar expressed reluctance about chemotherapy and insisted he was feeling better while medical professionals became increasingly concerned about Dunbar's mental health and his ability to decide whether or not to undergo

4

chemotherapy. (*Id.*, PageID.1464-66.) At times, Dunbar would claim he was cancer-free, while at other times he complained of continuing abdominal pain.

He underwent several evaluations regarding his mental status. One evaluator concluded that Dunbar was competent and understood the tremendous risks associated with his ongoing refusal to obey the treatment plans recommended to him. (*Id.*, PageID.1466.) Another, Dr. Saad, "opined that [Dunbar] would likely require a higher level of care, involuntary mental health treatment, and a guardian to make medical decisions." (*Id.*, PageID.1467.) Dunbar was later "referred for involuntary treatment after he presented with significant delusions of persecution and paranoia and refused mental health treatment." (*Id.*, PageID.1469.)

A panel hearing was scheduled for October 23, 2018, to determine whether Dunbar was mentally competent to continue refusing cancer treatment. Brian Van't Hof, a clinical social worker acting as Dunbar's advisor, provided Dunbar a notice of the upcoming hearing, as well as other required documents. (*Id.*) The notice advises prisoners of the right "to present evidence and witnesses and to cross-examine witnesses." (*Id.*, PageID.1470.) The notice also informs prisoners of the right to appeal the decision of the hearing committee. (*Id.*)

Defendants Emami, Butler, and Greiner formed the panel at Dunbar's hearing. Van't Hof attended as Dunbar's advisor. The panel received evidence regarding Dr. Saad's findings and recommendations, as well as Dunbar's objections. (*Id.*) Dr. Saad testified that he had diagnosed Dunbar with psychotic disorder and that Dunbar was refusing medically necessary treatment for both his mental health and colon cancer. (*Id.*) Dunbar cross-examined Dr. Saad, asking him about "coughing in [Dunbar's] face during the evaluation and [asking] whether Dr. Saad had read an order from the Sixth Circuit, which Dr. Saad said he had not." (*Id.*) After Dunbar's questioning, the panel asked if he had any evidence to present. Dunbar noted two grievances he had filed

against Dr. Saad for harassment, and requested to read into the record a series of documents including "court documents from his sentencing court, as well as the United States Court of Appeals for the Sixth Circuit, which [Dunbar] claimed showed that he had been sentenced to 20 to 40 years rather than 40 to 60 years." (*Id.*) Butler stated that they could not review the documents while on the record but that the panel would review the documents if Dunbar submitted them for review. Dunbar submitted the documents. Van't Hof and Dunbar then indicated that they had nothing else for the panel. (*Id.*, PageID.1471.)

After review, the panel unanimously concluded that Dunbar was mentally ill and deemed Dr. Saad's treatment plan suitable. (*Id.*) Dunbar, assisted by Van't Hof, appealed. The appellate board upheld the panel's decision on November 2, 2018.

## II. Standard

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

## III. Analysis

### A. R&R's Recommendations

As it will be relevant in addressing Dunbar's objections, the Court will briefly summarize the R&R's legal analysis.

The R&R found that Dunbar could not sustain an Eighth Amendment deliberate indifference claim against Huyge with respect to his alleged failure to treat Dunbar's hepatitis C

6

because Dunbar expressly declined treatment each time it was offered. (R&R, PageID.1474 (citing *Palmer v. Wagner*, 3 F. App'x 329, 331 (6th Cir. 2001) (plaintiff's "voluntary refusal to complete [treatment] as ordered precludes an Eight Amendment claim against" defendant); *Johnson v. Allen*, No. 1:15-cv-1329, 2016 WL 860428, at *4 (W.D. Mich. Mar. 7, 2016) ("Prison officials are not deliberately indifferent to a prisoner's serious medical needs when the prisoner refuses to accept medical treatment.").) The R&R found Dunbar's "assertion that he received no treatment . . . without merit." (*Id.*) Dunbar "does not deny that he refused all lab tests, and he fails to articulate what treatment he believes he should have received for his hepatitis C or how the lack of such unspecified treatment exposed him to an unreasonable risk of harm." (*Id.* (citing *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008) (plaintiff's "disagreement with the testing and treatment he has received since being diagnosed with Hepatitis C does not rise to the level of an Eight Amendment violation.")).)

The R&R also found no Eighth Amendment deliberate indifference with respect to Huyge's purported failure to adequately look into Dunbar's abdominal pain. The R&R notes a discrepancy between Dunbar's assertions that he had told Huyge about abdominal pain during checkups and the records of those checkups, which do not indicate any mention of abdominal pain. (*Id.*, PageID.1475.) However, the R&R found that Dunbar had failed to offer evidence showing that Huyge "was subjectively aware of an excessive risk of serious harm . . . and disregarded it." (*Id.*) Dunbar's "evidence might establish that . . . Huyge was negligent or misdiagnosed his condition, but negligent medical care is not enough to implicate the Eighth Amendment." (*Id.* (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)).) Moreover, once Dunbar's colon cancer was discovered, it is undisputed that Huyge attempted to provide treatment, which Dunbar refused.

7

Finally, the R&R concludes that the involuntary treatment hearing was conducted in accordance with the relevant prison policies. (*Id.*, PageID.1476-78.) Thus, the R&R found that Dunbar "fail[ed] to establish a due process violation" under the Fourteenth Amendment. (*Id.*, PageID.1478.)

### B. Dunbar's Objections

A summary of the R&R's recommendations was necessary because most of Dunbar's objections are wholly irrelevant and raise his dissatisfaction with previous decisions in this case. Those objections that do touch on the R&R and underlying motions for summary judgment often do so in conclusory fashion that provide little guidance to the Court as to what Dunbar actually finds objectionable.

Dunbar accuses Judge Berens of "acting as a witness," without explanation. (Pl.'s Objs., PageID.1485.) He later says Judge Berens "came up with a defense for the [Michigan Department of Corrections] that the Defendants did not even come up with for themselves." (*Id.*, PageID.1488.) Again, it is not clear what that defense is, or whether it was raised in this particular R&R. The Court reviewed the underlying motions for summary judgment and finds that the R&R based its analysis on arguments Defendants raised themselves. Dunbar also takes issue with many prior rulings made by Judge Berens that cannot be challenged through objections to the present R&R.

Dunbar implicitly objects to the R&R's conclusion that he had failed to establish any Eighth Amendment violation. He says "no one" offered any tests or treatment for his hepatitis C, but he does not challenge the many medical records indicating that he had been offered tests related to his hepatitis C. (*Id.*, PageID.1485.) He also does not say why he needed treatment—medical records indicate his hepatitis C was of mild severity, and his abdominal pain appears to have been caused by the colon cancer. Dunbar claims that he repeatedly told Huyge about his abdominal

8

pain but does not show how Huyge's conclusion that he suffered from "abdominal strain" rises above a negligent misdiagnosis to conscious disregard of a risk of serious harm.

With respect to the panel hearing, Dunbar simply asserts that the panel hearing was "illegal and void" for failing to comply with two prison policies.  (*Id.*, PageID.1488.)  He does not explain *how* the hearing was improper or how the R&R erred in its finding that the hearing had complied with the relevant policies.

Simply put, the Court finds that the R&R correctly concluded that Defendants' motions for summary judgment should be granted.

Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 174) is **APPROVED AND ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment (ECF Nos. 155, 159) are **GRANTED**.

As the motions for summary judgment dispose of all remaining claims in this case, a judgment will enter consistent with this Order.


Dated:  May 27, 2021                                  /s/ Hala Y. Jarbou
                                                      HALA Y. JARBOU
                                                      UNITED STATES DISTRICT JUDGE